J. E. Hale v. Commissioner.
Hale v. Commissioner
Docket No. 38908.
United States Tax Court
1953 Tax Ct. Memo LEXIS 86; 12 T.C.M. (CCH) 1182; T.C.M. (RIA) 53337; October 22, 1953
*86 Petitioner failed to prove the basis and the sale price of his converted home. Held, he is not entitled to the nonrecognition provisions of Sec. 112 (f), I.R.C.
Held, further, respondent's determination of a penalty under Sec. 291 is sustained. J. E. Hale, 5216 West 57th Terrace, Mission, Kans., pro se. David Karsted, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined a deficiency in income tax for the year 1948 in the amount of $1,537.08, and a penalty of $384.27 for failure to file a return within the time prescribed by law. The following issues are presented: (1) Is petitioner's gain from an involuntary conversion recognized in 1948 under section 112 (f), I.R.C.? (2) Is petitioner *87 liable for the penalty imposed by section 291 for failure to file his 1948 tax return within the time prescribed by law? Findings of Fact J. E. Hale, a resident of the State of Kansas, filed his 1948 tax return with the collector of internal revenue for the district of Kansas. He reported his income on the cash basis. For several years prior to 1948 petitioner owned, worked and made his home on 33.23 acres of land on Highway 32 near Kansas City, Kansas. On the southern part of the property, that part near the highway, there were several buildings including a home for petitioner and another for his son, and two rented houses, a gasoline station and a garage, three storage cellars, a store building, a market shed and a packing shed. Petitioner in partnership with his son operated a produce business known as Hale's Market. Some of the produce sold by the Market was grown by petitioner and his son on the north part of the property. Petitioner stated that the Market turn-over was $200,000 per year. Petitioner's nephew operated the gasoline station and the garage. The Santa Fe Railroad planned to build a hump yard [1] in the vicinity of petitioner's property. As part of this project, *88 the adjacent highway would have to be relocated. The agents of the Santa Fe Land and Improvement Company obtained the land for the project by purchase or by condemnation proceedings. Petitioner and the agents of the purchaser carried on negotiations for the greater part of 1947. Petitioner wanted $100,000 for his property but the purchaser only offered $70,000. In the early part of September 1947, the parties orally agreed on a purchase price of $95,000 for the entire property. On September 12, 1947, they entered into two separate option agreements. One, which expired December 12, 1947, covered the north 25 acres of farm land. This option provided for a consideration of $25,000, $5,000 to be paid when the option was executed and the balance when the option was exercised. The other option, which expired on March 1, 1948, covered the south 8.23 acres of improved land. It provided for a consideration of $70,000, $5,000 to be paid upon the signing of the option and the balance at the time the option was exercised. By a separate agreement, petitioner was entitled to remove the improvements from the land. Petitioner executed deeds for the two pieces of property. The deeds together with the *89 two option agreements were placed in escrow to await the purchaser's action. On September 12, 1947, petitioner received two checks for $5,000 each in accordance with the two option agreements. He gave one check to his son and deposited $4,000 in his own checking account in Kansas City, Kansas. On October 24, 1947, the petitioner received $20,000 when the purchaser exercised the option for the 25 acres of farm land. Petitioner divided this money with his son, and he then deposited $9,951.75 in the same account as the previous $4,000. On November 1, 1947, petitioner entered into a contract for the purchase of a five-room house in Mission, Kansas. He agreed to pay $14,600 for this property with a down payment of $1,500. On November 21, 1947, the owner of the property conveyed it to petitioner by warranty deed. Before the end of November petitioner had completely paid for this house. Between December 1, 1947, and March 1, 1948, petitioner removed the improvements from the land on the south part of his property. On or about March 1, 1948, he and his son received two checks which *90 totaled $65,000. These checks completed the payments on the second option. Part of this $65,000 was received as consideration for the sale of his home, other parts were for the business and the improvements on the 8.23 acres of land. Petitioner was in business for himself for about 18 years prior to 1947. He knew that income was taxable, and that he was required to file annual tax returns to reflect yearly income. For the year 1947 he employed an accountant to fill out his return; this accountant maintained a bookkeeping and accounting business. He was not a certified public accountant and did not hold a Treasury card. When the question arose in the latter part of 1947 as to whether petitioner was entitled to the benefit of section 112 (f), the accountant and petitioner consulted an experienced tax attorney. After this consultation, the 1947 return was filed and the proceeds received in 1947 from the sale of the 25 acres of farm land were reported. No claim was made for the benefit of section 112 (f). Neither the accountant nor the attorney ever advised petitioner that he did not have to file a return for the year 1948. Petitioner filed a return for the year 1948 on May 9, 1950, and *91 that return reported the proceeds received in 1948 from the sale of the 8.23 acres of land and claimed the benefit of section 112 (f) to the extent of $14,600 as "Cost of Replacement of Personal Dwelling." In a statement attached to the return petitioner stated that he replaced his personal residence in 1948 at a cost of $14,600. Respondent explained an adjustment to petitioner's 1948 income as follows: "(b) It is held that no portion of the proceeds received during the taxable year from the sale of property was expended in the acquisition of other properties similar or related in service or use to the property sold, nor was any portion of the proceeds handled as otherwise provided by section 112 (f) of the Internal Revenue Code relating to exemption of gain resulting from involuntary conversion. Therefore, no portion of the gain realized is subject to the exemption provided by section 112 (f) of the Internal Revenue Code." Opinion The first issue is whether petitioner is entitled to the benefit of section 112 (f) of the Code [2] upon the conversion of his property. There is no dispute that petitioner's property was compulsorily or *92 involuntarily converted within the meaning of the Code. The problem is whether the money received from the involuntarily converted property was expended for property similar in service or use. Petitioner contends that his "property was sold in 1947 as one package to one buyer for one price." He argues *93 that he used the first $30,000 ($5,000 for each of the two options and $20,000 for the unimproved land) of the $95,000 to purchase his new home. In opposition, respondent contends that there were two conversions, one in 1947 and one in 1948, and that only the 1948 conversion is involved in this proceeding. We can not agree with petitioner's argument. The record does not sustain a finding that there was a unit sale of his entire property and such a finding would be necessary for us to accept petitioner's argument on this issue. Moreover, there is not sufficient evidence for us to determine the basis or the cost of petitioner's home which was sold, under the threat of condemnation, on or about March 1, 1948. Further, the petitioner has produced no evidence as to what part, if any, of the $70,000, which was the aggregate purchase price for the improved land, was allocated as the sale price of his home. Without the basis and the sale price of his home, gain or loss on the sale can not be computed, and hence the question of non-recognition of gain can not be determined. Therefore, even if petitioner were legally entitled to the benefits of section 112 (f), which we do not decide, he could *94 not prevail herein because he has failed in his burden of proof. See Rule 32, Tax Court's Rules of Practice.
The second issue is whether petitioner's failure to file a return within the time prescribed by law was due to reasonable cause and not due to willful neglect. Section 291. Petitioner filed his 1948 return on or about May 9, 1950; it was due on March 15, 1949. Therefore, because it was not filed within the prescribed time, respondent determined a penalty under section 291. Petitioner contends on this issue that he was advised by an accountant or a tax attorney that "he had two years in which to reconvert the funds received from the forced sale, and as a result of that advice did not report the reconversion of the residential property until 1950." The evidence to sustain this contention was not sufficient. Petitioner testified that an accountant who prepared the 1947, 1948, 1949 and 1950 returns gave him this information. However, when the accountant, who testified as a witness, was examined by the respondent's counsel, he unequivocably denied that he gave petitioner this information. Further, he also denied that a tax attorney, who had been consulted about the applicability *95 of section 112 (f), gave petitioner this information. Petitioner declined the opportunity to cross-examine the accountant on this point. Viewed in its entirety, there is no showing of a reasonable cause for petitioner's failure to file a 1948 return within the prescribed time. Petitioner, a successful business man, was familiar with requirements for reporting income. We conclude that the failure to file was due to willful neglect. Respondent is sustained on the second issue. Petitioner has alleged error in respondent's allocation of the total sales price to the building and for the business good will. Petitioner failed to demonstrate the error in respondent's determination. Decision will be entered for the respondent. Footnotes
1. An inclined track in a railroad yard which enables the yard crew to switch trains by gravity.↩
2. SEC. 112. RECOGNITION OF GAIN OR LOSS. * * *
(f) Involuntary Conversions. - If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. * * * [See also, section 112(f)↩, as amended by the Revenue Act of 1951].